T. Edward Cundick (#10451) ted@hzn-law.com
**HORIZON LAW, PLLC**
4055 S. 700 E., Ste. 101C
Millcreek, UT 84107
Telephone: (801) 558-7452

Attorneys for Cannon's Classic Cars LLC, Debtor-in-Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re<br><br>Cannon's Classic Cars LLC,<br><br>Debtor. | Bankruptcy Case No. 26-22970<br><br>(Chapter 11 (Sub. V))<br><br>Honorable David H Leigh<br><br>[Filed Electronically] |

**MOTION TO APPROVE SETTLEMENT AGREEMENTS WITH VARIOUS CONSIGNING SELLERS**

Cannon's Classic Cars, LLC (**"CCC"** or the "**Debtor**"), debtor-in-possession of its Chapter 11 bankruptcy estate, moves this Court for an order approving settlement agreements between CCC and following consigning sellers: Marty Livingston, Thomas Crandall, Dave Olmsted, Holley Morrill, and Counts Kustoms (collectively, the **"Settling Consigning Sellers"**). In support of the Motion, Debtor alleges as follows:

**<u>GENERAL BACKGROUND FACTS</u>**

1. Debtor commenced this bankruptcy proceeding on May 19, 2026.

2. On or about June 3, 2026, CCC commenced an adversary proceeding against several defendants including the Settling Consigning Sellers.

3. The Settling Consigning Sellers have determined that they are willing to surrender title to the vehicles sold by CCC, but for which CCC failed to pay the Settling Consigning Sellers, in exchange for claims in the bankruptcy case and against the CCC motor vehicle dealer bond.

4. Attached hereto as Exhibit A is a settlement agreement between CCC and Marty Livingston.

5. Attached hereto as Exhibit B is a settlement agreement between CCC and Thomas Crandall.

6. Attached hereto as Exhibit C is a settlement agreement between CCC and Dave Olmsted.

7. Attached hereto as Exhibit D is a settlement agreement between CCC and Holley Morrill.

8. Attached hereto as Exhibit E is a settlement agreement between CCC and Counts Kustoms, which took by separate assignment the claims of consigning seller Tyler Turner, through a privately negotiated settlement agreement between Tyler Turner and Counts Kustoms.

9. CCC is anxious to get title to the respective nine vehicles referenced in the settlement agreements into the hands of the vehicle purchasers (who are also defendants in the referenced adversary proceeding).

## JURISDICTION AND CORE PROCEEDING

10. This Court has jurisdiction under 28 U.S.C. §§ 157(a) and 1334(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (H) and (O) and this Court has jurisdiction to enter a final order.

## RELATIONSHIP AMONG PARTIES

11. CCC has no connections or other relationship with the parties other than as set forth above.

## LEGAL ANALYSIS OF SETTLEMENT AGREEMENTS

CCC believes that the respective settlement agreements are in the best interest of the bankruptcy estate and its creditors. CCC has a legal obligation to ensure title to each sold vehicle is delivered to the respective buyer in a timely fashion. By entering into these settlement agreements, CCC fulfills that legal duty in the most efficient manner possible under the circumstances.

Typically, in considering whether to approve a settlement, courts consider four factors which are derived from *Kopp v. All American Life Ins. Co. (In re Kopexa Realty Venture Co.)*, 213 B.R. 1020, 1022 (BAP 10th Cir. 1997): (a) the probability of success in the litigation, (b) the difficulties to be encountered in collection, (c) the complexities and expense of the litigation involved, and (d) the interests of creditors in proper deference to their reasonable views. CCC's management has determined, considering these factors and utilizing her business judgment, that the settlement agreements are fair, equitable, and in the best interests of the Debtor's estate and creditors. Specifically:

(a) The probability of success: It seems likely that at least as to vehicles no longer in the Debtor's possession, CCC could succeed in obtaining a declaratory judgment that consigning sellers need to surrender title to the consigned and sold vehicles. Even though the probability of success on these claims is very high, entering into these settlement agreements at this time, at the very beginning of the adversary process, is an expeditious way to handle the titles which need to be surrendered. The Debtor is giving up very little in exchange for the settlements achieved (generally, it is conceding only to its right to object to the claims as asserted, though in Merrill's case Merrill negotiated for a further remedy of having a claim allowed for all purposes). Because the Debtor acknowledges that the Settling Consigning Sellers should be allowed claims in the bankruptcy court, conceding to those claims is not a significant detriment to the bankruptcy estate. Some Settling Consigning Sellers negotiated for a slightly higher claim than CCC necessarily believed the Settling Consigning Sellers might have been entitled to, but these departures amount to no more than a few thousand dollars, and the Settling Consigning Sellers' theories in support of their higher asserted claims are not without at least some merit, given the misstatements made by Michael Simnitt (Debtor's former sales manager).

(b) The difficulties to be encountered in collection: this factor is not relevant to these settlement agreements, as CCC did not seek by the adversary proceeding to collect any funds from the Settling Consigning Sellers.

(c) The complexities and expense of the litigation involved: entering into these settlement agreements at this time eliminates significant cost that could be incurred litigating the adversary proceeding with not just the five Settling Consigning Sellers, but also with the nine buyers of those vehicles (many of whom have not answered the adversary complaint or filed claims

prior to the July 28, 2026 claims bar date, despite having been served, presumably on the assumption that as long as they get the title they seek, they are willing to waive defenses they could have raised in the adversary proceeding).

(d) The interests of creditors in proper deference to their reasonable views. In the Debtor's discussions with the buyers and sellers affected by these settlement agreements, it seems they are universally in favor of these settlement agreements.

Accordingly, these settlement agreements are defensible and prudent, given the circumstances of the case. The Debtor is anxious to get title to the affected vehicles into the hands of the rightful purchasers, and to proceed to focus on a plan that will maximize treatment for the harmed Settling Consigning Sellers.

WHEREFORE, the Debtor respectfully requests that the Court enter an order approving the attached settlement agreements with Marty Livingston, Thomas Crandall, Dave Olmsted, Holley Morrill, and Counts Kustoms.

DATED this 3rd day of August 2026.

HORIZON LAW, PLLC

/s/ T. Edward Cundick
T. Edward Cundick,
Counsel to Cannon's Classic Cars, LLC

## CERTIFICATE OF SERVICE BY ELECTRONIC NOTICE (CM/ECF)

I hereby certify that on August 3, 2026, I electronically filed the foregoing **MOTION TO APPROVE SETTLEMENT AGREEMENTS WITH VARIOUS CONSIGNING SELLERS** with the United States Bankruptcy Court for the District of Utah using the CM/ECF system. I further certify that the list below of CM/ECF users in this case was generated by the CM/ECF system on the same day as the foregoing document was filed:

- **Adam S. Affleck** adam-affleck@rbmn.com, andalin-bachman@rbmn.com;nicole-gaitan@rbmn.com
- **James W. Anderson** jwa@clydesnow.com, mnortham@clydesnow.com
- **Connor L. Cantrell** clc@thlf.com, ard@thlf.com;cvm@thlf.com;gcc@thlf.com;jlh@thlf.com
- **Deborah Rae Chandler** dchandler@aklawfirm.com
- **Joseph M.R. Covey** jcovey@parrbrown.com, calendar@parrbrown.com;lstumpf@parrbrown.com
- **P. Matthew Cox** mcox@spencerfane.com, ecall@spencerfane.com;mwatson@spencerfane.com
- **T. Edward Cundick** tcundick@wnlaw.com, tcundick-secy@wnlaw.com;orders@wnlaw.com
- **Peter J. Kuhn** Peter.J.Kuhn@usdoj.gov, Lindsey.Huston@usdoj.gov;Rinehart.Peshell@usdoj.gov;Rachelle.D.Hughes@usdoj.gov;Brittany.Dewitt@usdoj.gov
- **David L. Pinkston** dpinkston@spencerfane.com, ecall@spencerfane.com;mwatson@spencerfane.com
- **Brian M. Rothschild tr** brothschild@parsonsbehle.com, ecf@parsonsbehle.com,docket@parsonsbehle.com;ecf.alert+Rothschild@titlexi.com;cbmr11@trustesolutions.net
- **Landon S. Troester** lst@clydesnow.com, rcondos@clydesnow.com
- **United States Trustee** USTPRegion19.SK.ECF@usdoj.gov
- **Aaron M. Waite** aaronmwaite@agutah.gov

/s/ T. Edward Cundick

# EXHIBIT A

*Settlement Agreement*

THIS SETTLEMENT AND MUTUAL RELEASE AGREEMENT (the "*Agreement*") is entered into by and between Cannon's Classic Cars, LLC, a Utah limited liability company ("CCC"), debtor-in-possession in bankruptcy case no. 26-22970, and plaintiff in Adversary Proceeding No. 26-2104 (the "*Adversary Proceeding"*), and Martha Livingston ("*Livingston*"). CCC and Livingston may be referred to herein individually as a "Party" or collectively as the "Parties."

*Recitals*

WHEREAS, Livingston signed Consignment Agreement(s) (the *"Consignment Agreement"*) authorizing CCC to sell the following vehicles on behalf of Livingston

Car
1965 Pontiac Lemans
1969 Chevrolet Camero
1978 Chevrolet Corvette
1969 Chevrolet Corvette
1974 Plymouth Barracuda (collectively, the *"Vehicles"*)
and

WHEREAS, Livingston also signed a Consignment Agreement to a sixth car, but that vehicle was not sold by CCC, and has been or will be returned to Livingston; and

WHEREAS, CCC did in fact sell the Vehicles to various buyers between January 17, 2026 and March 20, 2026, but failed to pay Livingston her share of the sale proceeds; and

WHEREAS, CCC filed a Chapter 11 bankruptcy petition on or about May 19, 2026; and

WHEREAS, CCC commenced the above-referenced Adversary Proceeding on or about June 3, 2026; and

WHEREAS, Livingston desires to resolve her involvement in the Adversary Proceeding, and is prepared to sign over title to the Vehicles to the various buyers in exchange for the consideration set forth below; and

WHEREAS, based on the Parties' desire to fully resolve any potential conflicts related to the Consignment Agreement, the Parties do hereby enter into this Agreement;

*Agreement*

NOW, THEREFORE, in consideration of the foregoing recitals and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, the Parties hereby agree as follows:

1. *Bankruptcy Court Approval.* This Agreement shall be contingent upon approval of the bankruptcy court, which approval shall be sought by CCC, either presently or in conjunction with any plan confirmation process.

2. *Delivery of Title*. Livingston shall, within 3 business days of CCC filing a motion to approve this Agreement, deliver fully executed title to the Vehicles to CCC, so that they can be signed over to the various buyers.

3. *Allowance of Claim*. Livingston shall file a proof of claim in the bankruptcy case, in the amount of $127,000.00 (less any bond proceeds recovered in the event that such proceeds are recovered prior to the effective date of any confirmed plan). CCC shall not oppose such proof of claim, and shall do everything reasonably within its power to see that the claim is allowed as filed and treated as favorably as all similarly situated claims in any plan to be confirmed in this case. Livingston shall also be deemed to have a valid claim in the amount of $127,000.00 against the bond proceeds referenced in the Adversary Proceeding, and to the extent such bond proceeds are obtained for the benefit of similarly situated claimants, Livingston shall share pro rata with other claims allowed against the bond proceeds.

4. *Dischargeability Litigation*. Despite any release stated below, Livingston shall maintain whatever right she may have to contest dischargeability of the debt owed to her reflected in the proof of claim filed. In the event such claim is determined to be non-dischargeable, it shall be limited to the amount of the claim agreed to herein.

5. *Adversary Litigation*. Livingston shall be excused from filing any answer in the Adversary Proceeding, unless and until any order is entered disapproving of this Agreement under paragraph 1 above.

6. *Mutual Releases.* Except as to the obligations created by or after this Agreement and preserved through the plan confirmation process, upon bankruptcy court approval of this Agreement, the Parties, for themselves and for all of their current, former, and future representatives, agents, partners, trustees, shareholders, members, managers, officers, directors, beneficiaries, predecessors, and attorneys (except Monica Simnitt and Michael Simnitt, who are expressly excluded from this release), and their respective successors and assigns, and all other persons or entities who may ever claim by, through or under such party, do hereby fully, completely, absolutely and forever discharge, release, waive, relinquish and relieve the other Parties, and their current, former, and future trustors, trustees, personal representatives, predecessors, affiliates, employees, members, managers, officers, shareholders, directors, beneficiaries, subsidiaries, affiliates, heirs, attorneys, agents, representatives, and their respective successors and assigns (except Monica Simnitt and Michael Simnitt), from any and all rights, claims, suits, actions, causes of action, proceedings, judgments, charges, complaints, damages, debts, fees, liabilities, demands, obligations, commitments, promises, acts, agreements, costs and expenses, of whatever kind or nature, which do or may exist, whether known or unknown, suspected or unsuspected, asserted or unasserted, absolute or contingent, which relate to the Consignment Agreement (the "*Released Matters*"). Any ambiguities relating to this Section 6 shall be resolved in favor of release and waiver of claims (except as to Monica Simnitt and Michael Simnitt).

7. *Representations and Warranties*. The Parties represent and warrant as follows:

a) They have had the opportunity to receive independent legal advice from their attorneys with respect to the advisability of executing this Agreement.

b) They have investigated the facts pertaining to this settlement and Agreement, and all matters pertaining hereto, to the full extent they deem necessary.

c) They have not assigned, conveyed, granted, transferred, or otherwise disposed of any portion of any of the claims released by such Party pursuant to this Agreement, and they will not breach any contract by any action provided for in this Agreement.

8. *Applicable Law and Jurisdiction.* This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of Utah. The state and federal courts located in Salt Lake County, Utah, will have exclusive jurisdiction to adjudicate any dispute arising under or in connection with this Agreement and each Party hereto waives any objection to jurisdiction and venue of any action instituted against it as provided herein and agrees not to assert any defense based on lack of jurisdiction or venue. The

non-breaching Party in any enforcement proceeding will be entitled to an award of all expenses, including reasonable attorney fees, incurred in obtaining redress.

9. *General Terms.* This Agreement contains the entire agreement between the Parties, and the terms of this Agreement are contractual and not mere recitals. The Parties acknowledge and agree that no waiver, amendment, or modification to any of the terms of this Agreement shall be effective unless in writing and signed by all Parties hereto. No waiver of any term, condition or default of any term of this Agreement shall be construed as a waiver of any other terms, conditions or default. The Parties acknowledge and agree that if any provision of this Agreement is found to be unenforceable, it will not affect the enforceability of the remaining provisions and the courts may enforce all remaining provisions to the fullest extent permitted by law. Headings have been inserted for convenience only and should not be construed when interpreting the provisions of this Agreement. Wherever the context so requires, the singular shall include the plural and any one gender (whether masculine, female or neuter) shall include the other genders. The word “including” shall mean “including but not limited to.” This Agreement may be signed using one or more counterparts, each of which when signed shall be deemed to be an original and all of which when taken together shall constitute one and the same agreement, to be effective as of the date of the last signature below (the “*Effective Date*”). An electronically signed or electronically transmitted facsimile of a signature-bearing page will be conclusive evidence of execution and delivery.

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the last date signed below.

CANNON’S CLASSIC CARS, LLC

By: Robin Ferrell
Printed Name: Robin Ferrell
Title: Chief Restructuring Officer
Date: 7/30/26

Martha Livingston

By: Martha Livingston
Printed Name: Martha Livingston
Date: 07/29/2026

Addendum dated 8/4/2026

1. This addendum supplements the settlement agreement between Cannon’s Classic Cars, LLC and Martha Livingston, dated July 30, 2026.
2. Once the motion to approve settlement as referenced in the settlement agreement is filed with the Bankruptcy Court, CCC may relinquish possession of the 1974 Plymouth Barracuda (which was previously consigned by Livingston to CCC), to Brendan Schellpfeffer, who paid CCC prepetition to acquire that vehicle.

______________________________
Robin Ferrell for Cannon's Classic Cars

Martha Livingston
Martha Livingston as personal representative

non-breaching Party in any enforcement proceeding will be entitled to an award of all expenses, including reasonable attorney fees, incurred in obtaining redress.

9. *General Terms.* This Agreement contains the entire agreement between the Parties, and the terms of this Agreement are contractual and not mere recitals. The Parties acknowledge and agree that no waiver, amendment, or modification to any of the terms of this Agreement shall be effective unless in writing and signed by all Parties hereto. No waiver of any term, condition or default of any term of this Agreement shall be construed as a waiver of any other terms, conditions or default. The Parties acknowledge and agree that if any provision of this Agreement is found to be unenforceable, it will not affect the enforceability of the remaining provisions and the courts may enforce all remaining provisions to the fullest extent permitted by law. Headings have been inserted for convenience only and should not be construed when interpreting the provisions of this Agreement. Wherever the context so requires, the singular shall include the plural and any one gender (whether masculine, female or neuter) shall include the other genders. The word "including" shall mean "including but not limited to." This Agreement may be signed using one or more counterparts, each of which when signed shall be deemed to be an original and all of which when taken together shall constitute one and the same agreement, to be effective as of the date of the last signature below (the "*Effective Date*"). An electronically signed or electronically transmitted facsimile of a signature-bearing page will be conclusive evidence of execution and delivery.

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the last date signed below.

CANNON'S CLASSIC CARS, LLC

By: Robin Ferrell
Printed Name: Robin Ferrell
Title: Chief Restructuring Officer
Date: 7/30/26

Martha Livingston

By: Martha Livingston
Printed Name: Martha Livingston
Date: 07/29/2026

Addendum dated 8/4/2026

1. This addendum supplements the settlement agreement between Cannon's Classic Cars, LLC and Martha Livingston, dated July 30, 2026.

2. Once the motion to approve settlement as referenced in the settlement agreement is filed with the Bankruptcy Court, CCC may relinquish possession of the 1974 Plymouth Barracuda (which was previously consigned by Livingston to CCC), to Brendan Schellpfeffer, who paid CCC prepetition to acquire that vehicle.

Robin Ferrell
Robin Ferrell for Cannon's Classic Cars

______________________________
Martha Livingston as personal representative

# EXHIBIT B

*Settlement Agreement*

THIS SETTLEMENT AND MUTUAL RELEASE AGREEMENT (the "*Agreement*") is entered into by and between Cannon's Classic Cars, LLC, a Utah limited liability company ("CCC"), debtor-in-possession in bankruptcy case no. 26-22970, and plaintiff in Adversary Proceeding No. 26-2104 (the "*Adversary Proceeding"*), and Thomas Crandall ("*Crandall*"). CCC and Crandall may be referred to herein individually as a "Party" or collectively as the "Parties."

*Recitals*

WHEREAS, Crandall signed a Consignment Agreement (the *"Consignment Agreement"*) authorizing CCC to sell that certain 1983 Toyota Hilux vehicle on behalf of Crandall; and

WHEREAS, CCC did in fact sell the vehicle to Robert Rippee on or about April 10, 2026, but failed to pay Crandall his share of the sale proceeds; and

WHEREAS, CCC filed a Chapter 11 bankruptcy petition on or about May 19, 2026; and

WHEREAS, CCC commenced the above-referenced Adversary Proceeding on or about June 3, 2026; and

WHEREAS, Crandall desires to resolve his involvement in the Adversary Proceeding, and is prepared to sign over title to the vehicle to Rippee in exchange for the consideration set forth below; and

WHEREAS, based on the Parties' desire to fully resolve any potential conflicts related to the Consignment Agreement, the Parties do hereby enter into this Agreement;

*Agreement*

NOW, THEREFORE, in consideration of the foregoing recitals and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, the Parties hereby agree as follows:

1. *Bankruptcy Court Approval.* This Agreement shall be contingent upon approval of the bankruptcy court, which approval shall be sought by CCC, either presently or in conjunction with any plan confirmation process.

2. *Delivery of Title*. Crandall shall, within 7 days of execution of this Agreement, deliver the fully-executed title to the vehicle to CCC, so that it can be signed over to Rippee.

3. *Allowance of Claim*. Crandall shall file a proof of claim in the bankruptcy case, in the amount of $16,000.00 (less any bond proceeds recovered in the event that such proceeds are recovered prior to the effective date of any confirmed plan). CCC shall not oppose such proof of claim, and shall do everything reasonably within its power to see that the claim is allowed as filed and treated as favorably as all similarly situated claims in any plan to be confirmed in this case. Crandall shall also be deemed to have a valid claim in the amount of $16,000.00 against the bond proceeds referenced in the Adversary Proceeding, and to the extent such bond proceeds are obtained for the benefit of similarly situated claimants, Crandall shall share pro rata with other claims allowed against the bond proceeds.

4. *Adversary Litigation*. Crandall shall be excused from filing any answer in the Adversary Proceeding, unless and until any order is entered disapproving of this Agreement under paragraph 1 above.

5. *Mutual Releases.* Except as to the obligations created by or after this Agreement and preserved through the plan confirmation process, upon bankruptcy court approval of this Agreement, the Parties, for themselves and for all of their current, former, and future representatives, agents, partners, trustees, shareholders, members, managers, officers, directors, beneficiaries, predecessors, and attorneys, and their respective successors and assigns, and all other persons or entities who may ever claim by, through or under such party (except for Michael Simnitt and Monica Simnitt, who are expressly excluded from any release), do hereby fully, completely, absolutely and forever discharge, release, waive, relinquish and relieve the other Parties, and their current, former, and future trustors, trustees, personal representatives, predecessors, affiliates, employees, members, managers, officers, shareholders, directors, beneficiaries, subsidiaries, affiliates, heirs, attorneys, agents, representatives, and their respective successors and assigns (except for Michael Simnitt and Monica Simnitt), from any and all rights, claims, suits, actions, causes of action, proceedings, judgments, charges, complaints, damages, debts, fees, liabilities, demands, obligations, commitments, promises, acts, agreements, costs and expenses, of whatever kind or nature, which do or may exist, whether known or unknown, suspected or unsuspected, asserted or unasserted, absolute or contingent, which relate to the Consignment Agreement (the "*Released Matters*"). Any ambiguities relating to this Section 5 shall be resolved in favor of release and waiver of claims (except as against Michael Simnitt and Monica Simnitt).

6. *Representations and Warranties*. The Parties represent and warrant as follows:

a) They have had the opportunity to receive independent legal advice from their attorneys with respect to the advisability of executing this Agreement.

b) They have investigated the facts pertaining to this settlement and Agreement, and all matters pertaining hereto, to the full extent they deem necessary.

c) They have not assigned, conveyed, granted, transferred, or otherwise disposed of any portion of any of the claims released by such Party pursuant to this Agreement, and they will not breach any contract by any action provided for in this Agreement.

7. *Applicable Law and Jurisdiction.* This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of Utah. The state and federal courts located in Salt Lake County, Utah, will have exclusive jurisdiction to adjudicate any dispute arising under or in connection with this Agreement and each Party hereto waives any objection to jurisdiction and venue of any action instituted against it as provided herein and agrees not to assert any defense based on lack of jurisdiction or venue. The non-breaching Party in any enforcement proceeding will be entitled to an award of all expenses, including reasonable attorney fees, incurred in obtaining redress.

8. *General Terms.* This Agreement contains the entire agreement between the Parties, and the terms of this Agreement are contractual and not mere recitals. The Parties acknowledge and agree that no waiver, amendment, or modification to any of the terms of this Agreement shall be effective unless in writing and signed by all Parties hereto. No waiver of any term, condition or default of any term of this Agreement shall be construed as a waiver of any other terms, conditions or default. The Parties acknowledge and agree that if any provision of this Agreement is found to be unenforceable, it will not affect the enforceability of the remaining provisions and the courts may enforce all remaining provisions to the fullest extent permitted by law. Headings have been inserted for convenience only and should not be construed when interpreting the provisions of this Agreement. Wherever the context so requires, the singular shall include the plural and any one gender (whether masculine, female or neuter) shall include the other genders. The word "including" shall mean "including but not limited to." This Agreement may be signed using one or more counterparts, each of which when signed shall be deemed to be an original and all of which when taken together shall constitute one and the same agreement, to be effective as of the date of the last signature below (the "*Effective Date*").

An electronically signed or electronically transmitted facsimile of a signature-bearing page will be conclusive evidence of execution and delivery.

[*Signature page follows*]

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the last date signed below.

CCC

By: Robin Ferrell
Printed Name: Robin Ferrell
Title: Chief Restructuring Officer
Date: 8/3/26

Thomas Crandall

By:__________________________
Printed Name: Thomas Crandall
Date: ________________________

An electronically signed or electronically transmitted facsimile of a signature-bearing page will be conclusive evidence of execution and delivery.

[*Signature page follows*]

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the last date signed below.

CCC

By: ______________________
Printed Name: Robin Ferrell
Title: Chief Restructuring Officer
Date: ______________________

Thomas Crandall

By: ______________________
Printed Name: Thomas Crandall
Date: 7/21/2026

# EXHIBIT C

*Settlement Agreement*

THIS SETTLEMENT AND MUTUAL RELEASE AGREEMENT (the "*Agreement*") is entered into by and between Cannon's Classic Cars, LLC, a Utah limited liability company ("CCC"), debtor-in-possession in bankruptcy case no. 26-22970, and plaintiff in Adversary Proceeding No. 26-2104 (the "*Adversary Proceeding*"), and Dave Olmsted ("*Olmsted*"). CCC and Olmsted may be referred to herein individually as a "Party" or collectively as the "Parties."

*Recitals*

WHEREAS, Olmsted signed a Consignment Agreement (the *"Consignment Agreement"*) authorizing CCC to sell that certain 1967 VW Karmann Ghia vehicle on behalf of Olmsted; and

WHEREAS, CCC did in fact sell the vehicle to Randy Ringnalda (*"Ringnalda"*) on or about March 30, 2026, but failed to pay Olmsted his share of the sale proceeds; and

WHEREAS, CCC filed a Chapter 11 bankruptcy petition on or about May 19, 2026; and

WHEREAS, CCC commenced the above-referenced Adversary Proceeding on or about June 3, 2026; and

WHEREAS, Olmsted desires to resolve his involvement in the Adversary Proceeding, and is prepared to sign over title to the vehicle to Ringnalda in exchange for the consideration set forth below; and

WHEREAS, based on the Parties' desire to fully resolve any potential conflicts related to the Consignment Agreement, the Parties do hereby enter into this Agreement;

*Agreement*

NOW, THEREFORE, in consideration of the foregoing recitals and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, the Parties hereby agree as follows:

1. *Bankruptcy Court Approval.* This Agreement shall be contingent upon approval of the bankruptcy court, which approval shall be sought by CCC, either presently or in conjunction with any plan confirmation process.

2. *Delivery of Title.* Olmsted shall, within 7 days of execution of this Agreement, deliver title to the vehicle to CCC, so that it can be signed over to Ringnalda.

3. *Allowance of Claim.* Olmsted shall file a proof of claim in the bankruptcy case, in the amount of $14,500.00 (less any bond proceeds recovered in the event that such proceeds are recovered prior to the effective date of any confirmed plan). CCC shall not oppose such proof of claim, and shall do everything reasonably within its power to see that the claim is allowed as filed and treated as favorably as all similarly situated claims in any plan to be confirmed in this case. Olmsted shall also be deemed to have a valid claim in the amount of $14,500.00 against the bond proceeds referenced in the Adversary Proceeding, and to the extent such bond proceeds are obtained for the benefit of similarly situated claimants, Olmsted shall share pro rata with other claims allowed against the bond proceeds.

4. *Adversary Litigation.* Olmsted shall be excused from filing any answer in the Adversary Proceeding, unless and until any order is entered disapproving of this Agreement under paragraph 1 above.

5. *Mutual Releases.* Except as to the obligations created by or after this Agreement and preserved through the plan confirmation process, upon bankruptcy court approval of this Agreement, the Parties, for themselves and for all of their current, former, and future representatives, agents, partners, trustees, shareholders, members, managers, officers, directors, beneficiaries, predecessors, and attorneys, and their respective successors and assigns, and all other persons or entities who may ever claim by, through or under such party (except for Michael Simnitt, who is expressly excluded from any release), do hereby fully, completely, absolutely and forever discharge, release, waive, relinquish and relieve the other Parties, and their current, former, and future trustors, trustees, personal representatives, predecessors, affiliates, employees, members, managers, officers, shareholders, directors, beneficiaries, subsidiaries, affiliates, heirs, attorneys, agents, representatives, and their respective successors and assigns (except for Michael Simnitt), from any and all rights, claims, suits, actions, causes of action, proceedings, judgments, charges, complaints, damages, debts, fees, liabilities, demands, obligations, commitments, promises, acts, agreements, costs and expenses, of whatever kind or nature, which do or may exist, whether known or unknown, suspected or unsuspected, asserted or unasserted, absolute or contingent, which relate to the Consignment Agreement (the "*Released Matters*"). Any ambiguities relating to this Section 5 shall be resolved in favor of release and waiver of claims (except as against Michael Simnitt).

6. *Representations and Warranties*. The Parties represent and warrant as follows:

a) They have had the opportunity to receive independent legal advice from their attorneys with respect to the advisability of executing this Agreement.

b) They have investigated the facts pertaining to this settlement and Agreement, and all matters pertaining hereto, to the full extent they deem necessary.

c) They have not assigned, conveyed, granted, transferred, or otherwise disposed of any portion of any of the claims released by such Party pursuant to this Agreement, and they will not breach any contract by any action provided for in this Agreement.

7. *Applicable Law and Jurisdiction.* This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of Utah. The state and federal courts located in Salt Lake County, Utah, will have exclusive jurisdiction to adjudicate any dispute arising under or in connection with this Agreement and each Party hereto waives any objection to jurisdiction and venue of any action instituted against it as provided herein and agrees not to assert any defense based on lack of jurisdiction or venue. The non-breaching Party in any enforcement proceeding will be entitled to an award of all expenses, including reasonable attorney fees, incurred in obtaining redress.

8. *General Terms.* This Agreement contains the entire agreement between the Parties, and the terms of this Agreement are contractual and not mere recitals. The Parties acknowledge and agree that no waiver, amendment, or modification to any of the terms of this Agreement shall be effective unless in writing and signed by all Parties hereto. No waiver of any term, condition or default of any term of this Agreement shall be construed as a waiver of any other terms, conditions or default. The Parties acknowledge and agree that if any provision of this Agreement is found to be unenforceable, it will not affect the enforceability of the remaining provisions and the courts may enforce all remaining provisions to the fullest extent permitted by law. Headings have been inserted for convenience only and should not be construed when interpreting the provisions of this Agreement. Wherever the context so requires, the singular shall include the plural and any one gender (whether masculine, female or neuter) shall include the other genders. The word "including" shall mean "including but not limited to." This Agreement may be signed using one or more counterparts, each of which when signed shall be deemed to be an original and all of which when taken together shall constitute one and the same agreement, to be effective as of the date of the last signature below (the "*Effective Date*"). An electronically signed or electronically transmitted facsimile of a signature-bearing page will be conclusive evidence of execution and delivery.

[*Signature page follows*]

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the last date signed below.

CANNON'S CLASSIC CARS, LLC

By: ______________________
Printed Name: Robin Ferrell
Title: Chief Restructuring Officer
Date: 7/16/26

Dave Olmsted

By: ______________________
Printed Name: Dave Olmsted
Date: July 16, 2026

# EXHIBIT D

*Settlement Agreement*

THIS SETTLEMENT AND MUTUAL RELEASE AGREEMENT (the "*Agreement*") is entered into by and between Cannon's Classic Cars, LLC, a Utah limited liability company ("CCC"), debtor-in-possession in bankruptcy case no. 26-22970, and plaintiff in Adversary Proceeding No. 26-2104 (the "*Adversary Proceeding"*), and Holley Morrill ("*Morrill*"). CCC and Morrill may be referred to herein individually as a "Party" or collectively as the "Parties."

*Recitals*

WHEREAS, Morrill signed a Consignment Agreement (the *"Consignment Agreement"*) authorizing CCC to sell that certain 1941 Mercury 19A vehicle on behalf of Morrill; and

WHEREAS, CCC did in fact sell the vehicle to Corey Miller (*"Miller"*) on or about April 21, 2026, and received payment of the full purchase price of $31,975.00 from Miller, but failed to give Morrill the notice of sale required by Utah Code § 41-3-803(4)(a) and failed to remit to Morrill her share of the sale proceeds within the time required by Utah Code § 41-3-803(4)(b); and

WHEREAS, CCC filed a Chapter 11 bankruptcy petition on or about May 19, 2026; and

WHEREAS, CCC commenced the above-referenced Adversary Proceeding on or about June 3, 2026; and

WHEREAS, Atlantic Specialty Insurance Company ("ASIC") issued Motor Vehicle Dealer Bond No. 800204472 in the amount of $75,000.00 (the "Bond"), against which Morrill asserts a claim, and ASIC is a defendant in the Adversary Proceeding; and

WHEREAS, Morrill desires to resolve her involvement in the Adversary Proceeding, and is prepared to sign over title to the vehicle to Miller in exchange for the consideration set forth below; and

WHEREAS, based on the Parties' desire to fully resolve any potential conflicts related to the Consignment Agreement, the Parties do hereby enter into this Agreement;

*Agreement*

NOW, THEREFORE, in consideration of the foregoing recitals and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, the Parties hereby agree as follows:

1. *Bankruptcy Court Approval.* This Agreement shall be contingent upon approval of the bankruptcy court, which approval shall be sought by CCC, within twenty-one (21) days of the Effective Date of this Agreement.

2. *Delivery of Title*. Morrill shall, within 7 days of execution of this Agreement, deliver endorsed title to the vehicle to CCC, so that it can be signed over to Miller.

3. *Allowance of Claim*. Morrill shall file a proof of claim in the bankruptcy case, in the amount of $28,500.00 (the "Allowed Claim"). Upon entry of the Court's Order approving this Agreement, the Allowed Claim shall be deemed allowed in that amount for all purposes, and shall not thereafter be objected to, disallowed, reduced, subordinated, recharacterized, offset, avoided, or otherwise modified by CCC or any successors. Morrill shall also be deemed to have a valid claim in the amount of $28,500.00 against the bond proceeds referenced in the Adversary Proceeding, and to the extent such bond proceeds are obtained for the

benefit of similarly situated claimants, Morrill shall share pro rata with other claims allowed against the bond proceeds. The Allowed Claim shall be reduced dollar-for-dollar on monies actually received by Morrill on account of the Bond. CCC shall not classify the Allowed Claim separately from the claims of other consignors, and shall treat the Allowed Claim no less favorably than the claim of any other consignor under any plan.

4. *Adversary Litigation*. Morrill shall be excused from filing any answer in the Adversary Proceeding, unless and until any order is entered disapproving of this Agreement under paragraph 1 above. In the event the Agreement is not approved, Morrill shall have 30 days from the date of the Court's determination to file her response to the Adversary Proceeding. CCC agrees to dismiss Morrill from the Adversary Proceeding within ten (10) days of the Court's order approving this Agreement.

5. *Mutual Releases.* Except as to the obligations created by or after this Agreement and preserved through the plan confirmation process, upon bankruptcy court approval of this Agreement, the Parties, for themselves and for all of their current, former, and future representatives, agents, partners, trustees, shareholders, members, managers, officers, directors, beneficiaries, predecessors, and attorneys, and their respective successors and assigns, and all other persons or entities who may ever claim by, through or under such party (except for Michael Simnitt, who is expressly excluded from any release), do hereby fully, completely, absolutely and forever discharge, release, waive, relinquish and relieve the other Parties, and their current, former, and future trustors, trustees, personal representatives, predecessors, affiliates, employees, members, managers, officers, shareholders, directors, beneficiaries, subsidiaries, affiliates, heirs, attorneys, agents, representatives, and their respective successors and assigns (except for Michael Simnitt), from any and all rights, claims, suits, actions, causes of action, proceedings, judgments, charges, complaints, damages, debts, fees, liabilities, demands, obligations, commitments, promises, acts, agreements, costs and expenses, of whatever kind or nature, which do or may exist, whether known or unknown, suspected or unsuspected, asserted or unasserted, absolute or contingent, which relate to the Consignment Agreement (the "*Released Matters*"). Any ambiguities relating to this Section 5 shall be resolved in favor of release and waiver of claims (except as against Michael Simnitt).

6. *Preservation of Non-Debtor Claims.* Nothing in this Agreement releases, waives, or impairs any claim of Morrill against Michael Simnitt.

7. *Representations and Warranties*. The Parties represent and warrant as follows:

a) They have had the opportunity to receive independent legal advice from their attorneys with respect to the advisability of executing this Agreement.

b) They have investigated the facts pertaining to this settlement and Agreement, and all matters pertaining hereto, to the full extent they deem necessary.

c) They have not assigned, conveyed, granted, transferred, or otherwise disposed of any portion of any of the claims released by such Party pursuant to this Agreement, and they will not breach any contract by any action provided for in this Agreement.

8. *Applicable Law and Jurisdiction.* This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of Utah. The state and federal courts located in Salt Lake County, Utah, will have exclusive jurisdiction to adjudicate any dispute arising under or in connection with this Agreement and each Party hereto waives any objection to jurisdiction and venue of any action instituted against it as provided herein and agrees not to assert any defense based on lack of jurisdiction or venue. The non-breaching Party in any enforcement proceeding will be entitled to an award of all expenses, including reasonable attorney fees, incurred in obtaining redress.

9. *General Terms*. This Agreement contains the entire agreement between the Parties, and the terms of this Agreement are contractual and not mere recitals. The Parties acknowledge and agree that no waiver, amendment, or modification to any of the terms of this Agreement shall be effective unless in writing and signed by all Parties hereto. No waiver of any term, condition or default of any term of this Agreement shall be construed as a waiver of any other terms, conditions or default. The Parties acknowledge and agree that if any provision of this Agreement is found to be unenforceable, it will not affect the enforceability of the remaining provisions and the courts may enforce all remaining provisions to the fullest extent permitted by law. Headings have been inserted for convenience only and should not be construed when interpreting the provisions of this Agreement. Wherever the context so requires, the singular shall include the plural and any one gender (whether masculine, female or neuter) shall include the other genders. The word "including" shall mean "including but not limited to." This Agreement may be signed using one or more counterparts, each of which when signed shall be deemed to be an original and all of which when taken together shall constitute one and the same agreement, to be effective as of the date of the last signature below (the "*Effective Date*"). An electronically signed or electronically transmitted facsimile of a signature-bearing page will be conclusive evidence of execution and delivery.

[*Signature page follows*]

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the last date signed below.

CANNON'S CLASSIC CARS, LLC

By: [signature]
Printed Name: Robin Ferrell
Title: Chief Restructuring Officer
Date: 7/31/26

Holley Morrill

By:____________________________
Printed Name: Holley Morrill
Date: _________________________

# EXHIBIT E

*Settlement Agreement*

THIS SETTLEMENT AND MUTUAL RELEASE AGREEMENT (the "*Agreement*") is entered into by and between Cannon's Classic Cars, LLC, a Utah limited liability company ("CCC"), debtor-in-possession in bankruptcy case no. 26-22970, and plaintiff in Adversary Proceeding No. 26-2104 (the "*Adversary Proceeding*"), and Counts Kustoms, LLC ("Kustoms"). CCC and Kustoms may be referred to herein individually as a "Party" or collectively as the "Parties."

*Recitals*

WHEREAS, Tyler Turner (*"Turner"*) signed a Consignment Agreement (the *"Consignment Agreement"*) authorizing CCC to sell that certain 1926 Ford Model T vehicle on behalf of Turner; and

WHEREAS, CCC did in fact sell the vehicle to Counts Kustoms, LLC ( *"Kustoms"*) on or about March 4, 2026, but failed to pay Turner his share of the sale proceeds, and CCC failed to deliver to Kustoms clear title to the purchased vehicle in a timely manner; and

WHEREAS, Kustoms made a separate deal with Turner to obtain title to the vehicle, and thereby acquired any and all claims Turner may have had against CCC; and

WHEREAS, CCC filed a Chapter 11 bankruptcy petition on or about May 19, 2026; and

WHEREAS, CCC commenced the above-referenced Adversary Proceeding on or about June 3, 2026; and

WHEREAS, Kustoms desires to resolve their involvement in the Adversary Proceeding, both with respect to the claim it acquired from Turner, and as to its own claim arising from CCC's initial failure to deliver title to the vehicle; and

WHEREAS, based on the Parties' desire to fully resolve any potential conflicts related to the Consignment Agreement, the Parties do hereby enter into this Agreement;

*Agreement*

NOW, THEREFORE, in consideration of the foregoing recitals and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, the Parties hereby agree as follows:

1. *Bankruptcy Court Approval.* This Agreement shall be contingent upon approval of the bankruptcy court, which approval shall be sought by CCC, either presently or in conjunction with any plan confirmation process.

2. *[Reserved].*

3. *Allowance of Claim.* Kustoms shall file a proof of claim in the bankruptcy case, in the amount of $18,000.00 (less any bond proceeds recovered in the event that such proceeds are recovered prior to the effective date of any confirmed plan). CCC shall not oppose such proof of claim, and shall do everything reasonably within its power to see that the claim is allowed as filed and treated as favorably as all similarly situated claims in any plan to be confirmed in this case. Kustoms shall also be deemed to have a valid claim in the amount of $18,000.00 against the bond proceeds referenced in the Adversary Proceeding, and to the extent such bond proceeds are obtained for the benefit of similarly situated claimants, Kustoms shall share pro rata with other claims allowed against the bond proceeds. For avoidance of doubt, the allowed claim referenced

herein shall account for both the claim that Tuner may have held against CCC, which Kustoms acquired post-petition, and also any claim held by Kustoms in its own right, on account of CCC's failure to timely deliver title, or any other wrongdoing by CCC.

4. *Adversary Litigation*. Kustoms shall be excused from filing any answer in the Adversary Proceeding, unless and until any order is entered disapproving of this Agreement under paragraph 1 above.

5. *Mutual Releases.* Except as to the obligations created by or after this Agreement and preserved through the plan confirmation process, upon bankruptcy court approval of this Agreement, the Parties, for themselves and for all of their current, former, and future representatives, agents, partners, trustees, shareholders, members, managers, officers, directors, beneficiaries, predecessors, and attorneys, and their respective successors and assigns, and all other persons or entities who may ever claim by, through or under such party (except for Michael Simnitt, who is expressly excluded from any release), do hereby fully, completely, absolutely and forever discharge, release, waive, relinquish and relieve the other Parties, and their current, former, and future trustors, trustees, personal representatives, predecessors, affiliates, employees, members, managers, officers, shareholders, directors, beneficiaries, subsidiaries, affiliates, heirs, attorneys, agents, representatives, and their respective successors and assigns (except for Michael Simnitt), from any and all rights, claims, suits, actions, causes of action, proceedings, judgments, charges, complaints, damages, debts, fees, liabilities, demands, obligations, commitments, promises, acts, agreements, costs and expenses, of whatever kind or nature, which do or may exist, whether known or unknown, suspected or unsuspected, asserted or unasserted, absolute or contingent, which relate to the Consignment Agreement (the "*Released Matters*"). Any ambiguities relating to this Section 5 shall be resolved in favor of release and waiver of claims (except as against Michael Simnitt).

6. *Representations and Warranties*. The Parties represent and warrant as follows:

a) They have had the opportunity to receive independent legal advice from their attorneys with respect to the advisability of executing this Agreement.

b) They have investigated the facts pertaining to this settlement and Agreement, and all matters pertaining hereto, to the full extent they deem necessary.

c) They have not assigned, conveyed, granted, transferred, or otherwise disposed of any portion of any of the claims released by such Party pursuant to this Agreement, and they will not breach any contract by any action provided for in this Agreement.

7. *Applicable Law and Jurisdiction.* This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of Utah. The state and federal courts located in Salt Lake County, Utah, will have exclusive jurisdiction to adjudicate any dispute arising under or in connection with this Agreement and each Party hereto waives any objection to jurisdiction and venue of any action instituted against it as provided herein and agrees not to assert any defense based on lack of jurisdiction or venue. The non-breaching Party in any enforcement proceeding will be entitled to an award of all expenses, including reasonable attorney fees, incurred in obtaining redress.

8. *General Terms.* This Agreement contains the entire agreement between the Parties, and the terms of this Agreement are contractual and not mere recitals. The Parties acknowledge and agree that no waiver, amendment, or modification to any of the terms of this Agreement shall be effective unless in writing and signed by all Parties hereto. No waiver of any term, condition or default of any term of this Agreement shall be construed as a waiver of any other terms, conditions or default. The Parties acknowledge and agree that if any provision of this Agreement is found to be unenforceable, it will not affect the enforceability of the remaining provisions and the courts may enforce all remaining provisions to the fullest extent permitted by law. Headings have been inserted for convenience only and should not be construed when interpreting the

provisions of this Agreement. Wherever the context so requires, the singular shall include the plural and any one gender (whether masculine, female or neuter) shall include the other genders. The word "including" shall mean "including but not limited to." This Agreement may be signed using one or more counterparts, each of which when signed shall be deemed to be an original and all of which when taken together shall constitute one and the same agreement, to be effective as of the date of the last signature below (the "*Effective Date*"). An electronically signed or electronically transmitted facsimile of a signature-bearing page will be conclusive evidence of execution and delivery.

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the last date signed below.

CANNON'S CLASSIC CARS, LLC

By: Robin Ferrell
Printed Name: Robin Ferrell
Title: Chief Restructuring Officer
Date: 7/14/2026

Counts Kustoms, LLC

By:
Printed Name: Kevin Mack
Its: Business MGR.
Date: 7/14/26